(89 South. 210)

No. 22798.

## MONTICELLO STATE BANK v. MARTIN et al.

(June 15, 1921.    Rehearing Denied June 30, 1921.)

*(Syllabus by the Court.)*

Bills and notes ☞525—Unsupported allegations insufficient to overcome positive evidence that holder of notes acquired them in due course before maturity and for value.

Allegation and inference, unsupported by proof, or facts, are insufficient to overcome positive evidence showing that the plaintiff in a suit upon negotiable promissory notes against the makers acquired such notes "in due course," and hence that his right of recovery could not be affected by any want or failure of consideration as between the makers and the original payee.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by the Monticello State Bank against A. G. Martin and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Wilkinson, Lewis & Wilkinson and Foster, Looney & Wilkinson, all of Shreveport, for appellants.

Wm. J. Berne, of Fort Worth, Tex., for appellee.

### Statement of the Case.

MONROE, C. J. Defendants (nine in number) prosecute this appeal from a judgment condemning them in solido to pay plaintiff $2,700, with interest and attorney's fees, being the aggregate amount represented by three negotiable promissory notes whereby they and each of them promised to pay $900 to the order of A. B. Holbert, with interest at 7 per cent. per annum from June 6, 1913, until paid, and 10 per cent. as attorney's fees in the event of nonpayment at maturity of principal or interest, and, if sued on or placed in the hands of an attorney for collection which notes, each contained the further stipulation that it was one of a series of three, and that, on the failure of the makers to pay either or any installment of interest due thereon, the holder "had the right to mature all of said notes, and thereupon the same shall become due and payable in full." The notes were made payable, respectively, on December 1, 1914, December 1, 1915, and December 1, 1916, and were given in payment of the price of a stallion, called "Ely Reflection," sold by the payee to the makers in a guaranty and sale contract which provided that, in case the stallion should prove unsatisfactory within a certain delay, the buyers should have the right to return him and get another of equal value in his stead. The buyers, in the meanwhile, gave a receipt

for the animal, as in good health (or "heart") and condition and as follows, to wit:

"Further, we advertise to the public that the notes and pay we have given to the said A. B. Holbert have been lawfully delivered to him and the same are his legal property, to negotiate and transfer as he may elect, and that the purchasers of said stallion have value received."

## Opinion.

The notes were indorsed by the payee without recourse, but it is shown that through his representative the payee guaranteed their collectibility and his own solvency. The evidence as to the bona fides of the transaction with the bank is uncontradicted, and all that defendants have to say against its complete acceptance is that it is incredible that a bank should buy the notes of people who lived 1,000 miles away and concerning whose solvency it made no inquiries. It appears, however, that the bank had been doing the same kind of business with Holbert for many years, and defendants have not shown that it has lost any money in the past or is likely to lose any through this transaction, from which it may be inferred that it has found reason to rely upon the judgment of Holbert, in the matter of the solvency of these to whom he sells his horses. Moreover, the president of the bank, who has held office in it for over 40 years, testifies that he was shown the guaranty sale contract, in which Holbert agreed to furnish another horse in the event the one sold should prove unsatisfactory, and the receipt in which the buyers acknowledged that the horse sold was in good condition when delivered to and accepted by them, and "advertised" the fact that the notes given by them were intended to be negotiated. Defendants' allegation of conspiracy between the bank and Holbert to defraud them by cutting them off from their defenses against Holbert is based upon mere inference, which the facts do not sustain; and, being of that

149 LA.—12

opinion, we think our decision might be rested upon the ground that plaintiff is holder and owner of the notes in due course, and that its right of recovery cannot be affected by any question of want or failure of consideration as between defendant and Holbert. Act 64 of 1904, § 57, p. 156; Wolf v. Zachary & N. E. R. Co., 128 La. 1092, 55 South. 685. But the judge a quo saw fit to go into that question and rest his decision upon the ground that the remedy agreed on by defendants in the event that the horse delivered to, and accepted by, them, should prove unsatisfactory, was that they should demand and receive another horse of equal value, and that they had never made such demand, and our inspection of the record herein discloses no error in that finding. The case entitled Monticello State Bank v. Edwards, 89 South. 208,[1] No. 22797, of our docket (this day decided), arises out of a transaction identical in its main features with that here involved, and the pleadings are the same. The reasons for judgment assigned in that case are therefore applicable here, and are adopted as in part our reasons for judgment in this case.

Judgment affirmed.