Statement of the Case.
MONROE, C. J.
This case comes up on appeal by defendants from a judgment condemning them to pay plaintiff $2,700, with certain interest and attorney’s fees, as the holder and owner of three promissory notes, which may be described as follows: Each note bears date May 28, 1913, is signed by defendants (ten in number), and contains the promise of them, or either of them, to pay to the order of A. B. Holbert, at the First National Bank of Shreveport, $900, with interest at 7 per cent, per annum from date until paid, and, if sued on, or placed in the hands of an attorney for collection, an additional amount of 10 per cent, upon principal and interest, as attorney’s fees. Each note contains also a recital to the effect that it is one of a series of three notes of even date, maturing, respectively, November 1, 1914, December 1, 1915, and December 1, 1916, and that, on the failure of the makers to pay either note or part of either at maturity, or the interest on either when due, the holder may at his option mature all of them, and they shall become payable in full. Defendants by way of answer admit their signatures to the notes, but deny that they were delivered for value. They “have no recollection of the terms and conditions of said notes, and are therefore ■unable to say whether the notes sued on are the ones signed by them or not.”
They then allege:
That the payee of the notes, in conjunction with plaintiff, desiring to dispose of a certain worthless and diseased horse, induced them to buy him, knowing him to be worthless for their purposes, and “that they believe, and therefore aver, that he transferred said notes to said plaintiff with • the fraudulent purpose and design of cutting off any defenses against the payment thereof, and your defendants believe, and therefore aver, that the said bank, plaintiff herein, well knew the consideration of said notes and well knew the purposes for which said Holbert was transferring the same to it, and, with such knowledge, entered into said fraudulent conspiracy for the purpose of beating and defrauding them.”
Plaintiff then, by supplemental petition, set forth the contract whereby defendants bought the horse ■ in question, and which recites the giving of the notes, etc., and defendants answered, admitting the signing of the contract and also the signing of a receipt which reads:
“Town of Vivian, State of Louisiana:
“This is to certify that we have this day received of A. B. Holbert, of Greely, Iowa, the German coach, stallion Alfred, No. 5685, in good heart [health?] and condition. * * *
“We received the said horse where he now stands, at the stable of Caldwell & Edwards, with the understanding that he is free and unincumbered. We also have receipt for the certificate of registration of said horse, as recorded in the German Handovian [Hanoverian] & Oldenberg German Stud Book, No. 5685, and testify that the horse was purchased on no other representation on the part of the salesman than those stipulated in the regular-guaranty given to, and accepted by, us as part of the sale contract. We hereby receive all of the above for the purchasers, and for them and ourselves, accept the same as our property, acknowledging that the sale and delivery of the aforesaid horse and papers above mentioned was according to the agreement and as represented to us by the salesmen of the said Holbert. Further, we advertise to the public that the notes and pay we have given to the said Holbert have been lawfully delivered to him, that the same are his legal property, to •negotiate and transfer as he may elect, and that the purchasers of said stallion have value received.
“Signed and delivered this 28th day of May, 1913, at Vivian, La.”
Opinion.
The guaranty and sale contract are in evidence, but we conclude that plaintiff acquired the notes sued on “in' due course,” and is entitled to recover the amounts called for by them, without reference to the consideration *349 between the makers and the original payee. Act 64 of 1904, § 52 et seq., pp. 155,156.
Tlie uneontradieted evidence shows that the plaintiff bank is established in Monticello, Iowa, and that its president has been connected with it for over 40 years; that A. B. Holbert is a horse breeder, importer, and farmer who has been engaged in these pursuits in that neighborhood for more than 30 years; that he buys his stock in trade .for cash, and sells on credit, represented by the notes of his purchasers, and that, in order to keep himself supplied with funds, he sells the notes; that his business in that line amounts to many thousands Of dollars per annum; and that a great deal of it has been done with the plaintiff bank, which in this particular instance bought notes to the aggregate amount of $9,700, for which it gave a draft that was duly paid. The testimony of the president of the bank was given 16 months before the ease was tried, and no evidence to the contrary of that given by him was offered by defendants; the only objection which they offer to its complete acceptance being stated in the brief filed in their behalf as follows:
“The fact that its officers testified that it bought this paper signed by parties in Caddo parish, La., residing 1,000 miles away from the location of the plaintiff bank, and about whom they knew nothing and of whom it made no inquiry, is such a remarkable story as to shock the belief of any reasonable man.”
The president, however, testifies that in the name and by the authority of her husband Mrs. Holbert, who had transacted such business for her husband during almost the' entire period _of their married life (say 30 years), guaranteed his solvency and the col-, leetibility of the notes, and submitted to his (the president’s) inspection the guaranty and sale contract and receipt for the horse, in connection with which the notes were given. From the interest displayed by defendants in' their efforts to defeat plaintiff’s attempt to obtain judgment in this case, it would not. be unreasonable to assume that,' in- fact, they were, and are solvent, and that, after dealing with Holbert for many years, plaintiff’s president, in relying in part upon his assurance to that effect, was not so incredibly unsound in his judgment as defendant’s counsel seem to think, and still less do we find any support in' the facts disclosed by the record of the charge of fraud and conspiracy, etc., between the bank and Holbert. Another defense set up in argument is that the notes show an alteration, consisting of the change of the figure “8” to the figure “7,” so that they purport to bear the lower rate of interest. But, whatever might be the merits of that contention as applied to a change to the advantage of the maker of a note who is otherwise liable, it cannot be entertained when not set up in the pleadings or mentioned by way of objection to the evidence, and in this instance the answer of defendants contains nothing on the subject of the alteration; the instrument as altered having been offered and admitted in evidence without objection, the attention of the trial court having been called to the alteration only in the argument, and it then appearing that the alteration inured to the benefit of the maker of the notes and consisted of the scratching out of the printed figure “8” and substituting the figure “7,’.’ as fixing the rate of interest, from which it may reasonably be presumed that the change was made when the notes were executed and delivered. At any rate, the objection came too late, as plaintiff was afforded no opportunity to meet it by proving the circumstance under which the alteration in the printed form was made. Hen. Dig. vol. 1, p. 493. In Cantrelle v. Percy, 17 La. 521, being a suit against the indorser of a note who admitted his signature and pleaded certain matters in avoidance which were unsupported by evidence, it was held that plaintiff was properly allowed to prove that the signature of the maker had been erased through ..error, *351 though it had not been so alleged in the petition, and that, if any material eircumv stance existed to show that the erasure was to affect or destroy the liability of the indorser, it was his duty to avail himself of it in his answer.
In the instant case the judge in quo found (and properly as we think) that the case was with the plaintiff on the question of consideration, to which point he gave particular attention; but, as we conclude that plaintiff is entitled to recover as- a holder “in due course” of negotiable promissory notes, issued with the written assurance, by the makers, that they had received value for them, that they belonged to the payee, and were intended to be negotiated, we consider it immaterial whether they actually received value or not, and hence deem it unnecessary to give further reasons for concurring with our brother of the district court on that point. Act 64 of 1904, §§ 52, 57, pp. 155,156.
Judgment affirmed.